IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHESAPEAKE OPERATING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-940-M |
| ) | |
| ZBJ, LLC, f/k/a Tomahawk Treating ) | |
| Services, LLC, and JACK AMEN., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S *DAUBERT* MOTION TO EXCLUDE TESTIMONY
OF TERRY J. WESTEMEIR & BRIEF IN SUPPORT**

Pursuant to Federal Rule of Evidence 702, Federal Rule of Civil Procedure 37(c)(1), and the standards announced in *Daubert v. Merell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Plaintiff, Chesapeake Operating, Inc. ("Chesapeake") moves the Court for an Order excluding the report and testimony of Defendants ZBJ, LLC f/k/a Tomahawk Treating Services, LLC ("ZBJ") and Jack Amen's ("Amen") (together "Defendants") designated expert, Terry J. Westemeir ("Mr. Westemeir"). In support of its Motion, Chesapeake states as follows:

**Introduction**

Chesapeake filed this action in state court in June 2013, alleging that ZBJ had overbilled Chesapeake for oilfield related services. *See* Notice of Removal and Exhibits thereto [Dkt. No. 1]. ZBJ (the only defendant at the time) removed the matter to this Court on September 3, 2013. *Id.*

14461832_1

Since that time, Chesapeake has continued to work diligently to secure the discovery necessary to prosecute its claims. Fortunately for Chesapeake, it was able to obtain much of the discovery it needed with regard to the issue of liability quite quickly when, during his deposition in March of 2014, ZBJ's principal owner, Amen, offered the following testimony:

```
Q.     So how are you going to explain it?  I mean,
you overbilled us.  Right?
               MR. GASKINS:  Object to form.
               THE DEPONENT:  What's that mean?
               MR. GASKINS:  That means you can still
answer.
       Q.     (BY MR. AVERY)  You overbilled us.  Right?
       A.     Yeah, we overbilled you.
```

See Amen Dep. 81:14-21, attached hereto as Exhibit 1.

In light of Mr. Amen's testimony, Chesapeake's discovery in this case has largely consisted of work to quantify its damages. This effort has been led by Chesapeake's retained expert George N. Keeney III ("Mr. Keeney")—an accountant with extensive forensic and oil and gas related experience—who has been provided with various billing and financial documents produced during discovery, including ZBJ's employees' time cards, sub-contractor invoices submitted to ZBJ, ZBJ's work tickets, ZBJ's invoices to Chesapeake, and ZBJ's QuickBooks file. As Chesapeake has previously explained to the Court, Mr. Keeney used these files to determine the precise number of hours that were not actually worked by ZBJ and its sub-contractors, but for which ZBJ sought payment from Chesapeake. *See, e.g.*, [Dkt. Nos. 16 & 29]. Mr. Keeney did this by comparing the

number of hours stated in ZBJ time cards and invoices submitted to ZBJ by subcontractors to the number of hours billed for the same work via work tickets and corresponding invoices.

Mr. Keeney's work was memorialized in a written report timely transmitted to Defendants on July 31, 2014.  *See* [Dkt. No. 40].  In response, and after receiving an extension of the deadline to do so from the Court based on a Motion that was filed after the original deadline had expired, <u>see</u> Motion [Dkt. No. 43] and Order [Dkt. No. 46], Defendants transmitted the expert report of Mr. Westemeir (the "<u>Report</u>") to Chesapeake on September 15, 2014.  Mr. Westemeir's Report, with exhibits, is attached hereto as Exhibit 2.

Mr. Westemeir's Report does little to advance the only remaining disputed issue in this litigation, which again is the amount of damages suffered by Chesapeake.  Rather than attempt to determine whether there has been any overbillings by looking at billing data, Mr. Westemeir instead opines that because Chesapeake "approved . . . invoices and/or related work orders in accordance with [Chesapeake] policies and procedures prior to [Chesapeake] authorizing and making payment to [ZBJ]," "[t]here is not overbilling . . . and, therefore, no damages . . . ."  <u>See</u> Report at 5.  Put otherwise, Mr. Westemeir's opinion is that because Chesapeake signed off on the work tickets that were used to generate the invoices in question, there is no need to, as Mr. Keeney did, attempt to verify the accuracy of the data in the work tickets and invoices by comparing it to the data in the relevant time cards of the individuals who performed the work.

| | |
|---|---|
| Q | Because ultimately the only way to verify the work ticket is to look at the hours from some other source? |
| | MR. MILLER: Objection as to form. Calls for speculation. |
| A | Yeah. I don't – see, you're wanting to back up on the whole thing and really those hours were verified. |
| Q. | How? |
| A. | By the process of getting them approved at the time of the work being done at – by Chesapeake at the well. |
| Q. | So once we sign it, it's verified? |
| A. | They review it. |
| Q. | So that's a yes? Once we sign it, you would consider that verified? |
| A. | They approved it. I won't go to the definition of verified and quibble with you on that, but they have approved the invoice. |

Westemeir Dep. 162:13-163:6, Nov. 21, 2014 (rough draft of transcript), attached hereto as Exhibit 3.

Based on his legal conclusion that there was no overbilling because work tickets were signed and invoices paid, Mr. Westemeir indicates that Mr. Keeney's mathematical work was "a monumental waste of time." See Report at 9 n.2. As a result, Mr. Westemier has made no need to attempt to discredit Mr. Keeney's mathematical calculations based on the actual math, itself. Instead, Mr. Westemeir merely concludes that because there was no fraud or overbilling, Mr. Keeney started from a flawed

4

premise. See Westemeir Dep., Ex. 3, at 62:16-63:3 ("Q. Fair to say that a summary of that first bullet point is that in your opinion Mr. Keeney started from a flawed premise because he didn't properly understand the billing procedures of ZBJ? MR. MILLER: Objection to form. A. Not only the billing procedures of ZBJ and the requirements of Chesapeake of how the services were to be performed according – back to the master services agreement, how they were to be billed and how – what was required before Tomahawk was paid.").

As discussed above, Mr. Westemeir's opinions and testimony go to the ultimate issue of liability in the case (*i.e.*, whether there has been any overbilling by Defendants). It is, however, well established that no expert can opine as to such ultimate issues in a case. Moreover, Mr. Westemeir's opinions are based on his understanding of the relative legal rights and obligations between the parties based on the terms included in their contract. But Mr. Westemeir, as an accountant, is not qualified to tell the jury what the contract means. For these and other reasons discussed below, Mr. Westemeir's expert report and testimony should be excluded from trial.

## Argument & Authorities

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

  (c) the testimony is the product of reliable principles and methods; and

  (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The criteria for the admissibility of expert testimony was further elaborated upon by the Unites States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals*, *Inc.*, 509 U.S. 579 (1993), and its progeny. Here, ZBJ bears the burden of demonstrating to the Court that the Westemeir Report and Mr. Westemeir's testimony are admissible by showing that they meet the reliability requirements of Rule 702 and *Daubert*. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001). ZBJ cannot satisfy its burden.

## I. Mr. Westemeir is not qualified to opine on whether ZBJ has satisfied the provisions of the Master Service Agreement ("MSA").

Mr. Westemeir spends much of his Report offering his opinion as to the meaning of the MSA and whether the provisions of the MSA have been breached by ZBJ. *See, e.g.*, Ex. 2, Report, at 4 ("The MSA does not prohibit mark-up of third party services."); *id.* at 6 ("Based upon my review of Tomahawk invoices and work tickets, Tomahawk satisfied the provisions of the MSA."); *id.* at 16 ("[M]y review of the thousands of pages of invoices and work tickets produced by Tomahawk reveals supporting documentation that satisfied the MSA . . . ."); *id.* at 18 ("I found that the Tomahawk work and document flow was designed and sufficient to meet the specific requirement of the MSA . . . ."); *see also* Westemeir Deposition, Ex. 3, at 48:16-49:2 ("Q. And I'm not trying to be coy with you, but to the extent you'll be offering an opinion that the accounting was done in a manner consistent with the contract, as part of that, you'll need to tell the jury what you

6

think the contract required from an accounting standpoint; is that right? A. I will from an accounting standpoint, I will, based on my experience and my reading of the contract and how it's been similar language has been applied to other cases, yes, how I would apply the accounting here."). This makes the focus of Mr. Westemeir's Report improper for multiple reasons.

*First*, it is well established that "[a]bsent any need to clarify or define terms of art, science or trade, expert opinion testimony to interpret contract language is inadmissible." *Delta Mining Corp. v. Big Rivers Electric Corp.*, 18 F.3d 1398, 1402, (7th Cir. 1994); *see also Ackerman McQueen, Inc. v. B Equal Co.*, 258 F.R.D. 484, 490 (W.D. Okla. 2009) (finding an expert witness not qualified to testify regarding the meaning of an unambiguous contract); Am. Jur. *Expert and Opinion Evidence* § 354 (explaining that "unless the words or phrases as used in a writing which is the subject of controversy are terms of art, science, or trade, or there is something to show that they were not used in their ordinary and plain meaning, opinion testimony to interpret the language is not admissible"). Mr. Westemeir's testimony about what the MSA required and whether those requirements were met is, simply put, patently inadmissible.

*Second*, even if expert testimony regarding the terms of the MSA and whether the MSA had been breached was proper, Mr. Westemeir is not qualified to offer such testimony. Mr. Westemeir is a certified public accountant, not an expert in contract interpretation or analysis. *See* Ex. AG to Ex. 2, Report. Simply put, an accountant is not qualified to interpret the legal meaning of a contract. *See Nat'l Jockey Club v. Ganassi*, No. 04 3743, 2009 WL 2177217, at *8 (N.D. Ill. July 21, 2009) ("[The accountant

7

proffered as an expert witness] may testify about areas within the scope of his expertise as an accountant. He may not, however, opine about the meaning and/or legal effect of any language in the Agreements . . . ."). Mr. Wesetmeir admitted as much in his recent deposition:

> Q                  Okay. But there are some instances in which you think you wouldn't need help because based on your education and training, you yourself would be able to come to a conclusion as to the legal meaning of the terms of the lease?
> . . . .
> THE WITNESS:       Yeah. Not to the legal, no.
>
> Q (BY MR. AVERY)   [O]kay. So if somebody needed to know the legal meaning of the terms of a commercial contract, they should not come and ask you?
> A                  They should not, and I would not give them a legal opinion.

Westemeir Dep., Ex. 3, at 18:5-:20.

Moreover, Mr. Westemeir has no relevant experience in the oil and gas industry, as is needed to offer a proper opinion on the application of a specialized contract such as the MSA. Mr. Westemeir's curriculum vita does not include a single reference to experience in the oil and gas industry. *See* Ex. AG to Ex. 2, Report. And moreover, whatever work he might have performed in relation to the industry has related to accounting, not drafting contracts. As Mr. Westemeir noted, if someone needed to know the meaning of the terms in a commercial contract, they should *not* come to him. He is not qualified to talk about the meaning of the terms of a commercial contract.

All told, no expert testimony is required for the jury to understand the meaning of the terms in the MSA and, even if such testimony was required, Mr. Westemeir—as an

accountant—is the wrong type of expert to provide it. That being the case, Mr. Westemeir's opinions regarding the meaning of the terms of the MSA and whether those terms have been breached should be excluded from trial.

**II.      Mr. Westemeir's opinion regarding whether a Chesapeake employee agreed to the amounts billed is an ultimate legal conclusion for the jury to reach.**

This Circuit unequivocally holds that "[i]n no instance can a witness be permitted to define the law of the case." *Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir. 1988) (en banc). *Specht* applied this rule to hold that the district court erred in admitting an expert's "legal conclusions touching upon nearly every element of the plaintiffs' burden of proof" and that the trial court thus erred in "allow[ing] the expert to supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence." *Id.* at 808; *see also Oakland Oil Co., v. Conoco, Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998) ("Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts"); *Karns v. Emerson Electric Co.*, 817 F.2d 1452, 1459 (10th Cir. 1987) (stating that expert "[o]pinions embracing legal standards" may be excluded because of "likelihood of jury confusion").

Other circuits apply the same or similar rules to prevent experts from providing "testimony . . . that constitutes mere personal belief as to the weight of the evidence," because such testimony "invades the province of the fact-finder." *Watkins v. New Castle Cnty.*, 374 F. Supp. 2d 379, 391 (D. Del. 2005) (citing *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1273 (6th Cir.1988), in which an "expert [was] permitted to testify as to

9

the customary duty of factory representatives in the air compressor industry, but should not have been permitted to opine on breach of such duty because the jury was equally qualified to make that determination"); *SEC. v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill.) ("Expert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand.").

In his Report, Mr. Westemeir repeatedly reaches ultimate legal conclusions as if he were a lawyer writing a brief, which he is not. *See* Ex. 3,Westemeir Dep. 8:1-:3 ("Q Do you hold a law degree, Mr. Westemeir? A I do not."). These ultimate legal conclusions that are within the purview of the jury, not an expert witness. For example, Mr. Westemeir determines that accurate, sufficient records were maintained by ZBJ because a Chesapeake supervisor preliminarily approved the "invoices, work tickets and supporting documentation." *See* Ex. 2, Report, at 16; *see also* Ex. 3, Westemier Dep. 162:13-:20 ("Q Because ultimately the only way to verify the work ticket is to look at the hours from some other source? . . . THE WITNESS: Yeah. I don't – see, you're wanting to back up the whole thing and really those hours were verified."). However, whether such alleged "approval" of the documents is sufficient to find that no overbilling occurred or that the MSA was not breached is an ultimate determination to be made by the jury, not by Mr. Westemeir. In fact, ZBJ's counsel appears to agree that Mr. Westemeir oversteps his role in reaching ultimate legal conclusions:

> Q   That's good. I want to make sure I get your testimony and you understand the questions. If somebody from ZBJ brought a work ticket to the Chesapeake hand in the field and that work ticket had an erroneous number of hours, it

|   |   |
|---|---|
|   | misstated the number of hours worked and the person at Chesapeake nevertheless signed that work ticket approving it, what's the significance of that to you? |
| A | Well, I would think that the significance of that from an accounting standpoint would be that the review process that's implicated by Chesapeake for that review did not function properly in that case. |
| Q | Okay. And if that happens, do you think Chesapeake has any recourse against – |
| MR. MILLER: | Objection. |
| Q (BY MR. AVERY) | -- ZBJ. |
| MR. MILLER: | Objection. Calls for a legal conclusion. |

Westemeir Dep., Ex. 3, at 105:6-:25; *see also id.* at 112:21-:24 ("Q So the approval – once we sign it. [W]e have no more recourse? MR. MILLER: Objection as to the question. Calls for a legal conclusion. . . .").

Mr. Westemeir's Report and related testimony consists largely of statements of law, determinations of fact, and pure legal argument. Because experts are prohibited from offering any of these things, the Report and Mr. Westermeir's related testimony should be excluded from the trial of this case.

## Conclusion

For the reasons stated above, Chesapeake respectfully submits that the Report and opinions offered therein by Terry J. Westemeir should be stricken and his testimony should be barred pursuant to Federal Rule of Evidence 702, Federal Rule of Civil Procedure 37(c)(1), and the standards announced in *Daubert*.

Respectfully submitted,


*/s/ Michael K. Avery*
Spencer F. Smith, OBA # 20430
Michael K. Avery, OBA # 22476
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
Telephone:   (405) 270-6012
Facsimile:    (405) 270-7212
Email:          spencer.smith@mcafeetaft.com
                    michael.avery@mcafeetaft.com

**ATTORNEYS FOR CHESAPEAKE OPERATING, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of November, 2014, I electronically transmitted the foregoing document to the following ECF registrants:

J. Randall Miller
Gentner F. Drummond
Garry M. Gaskins, II

**ATTORNEYS FOR ZBJ, LLC**

                                                */s/ Michael K. Avery*
                                                Michael K. Avery